**UNITED STATES of America, Appellee,**

v.

**Lawrence STEVENS, Appellant.**

**No. 74–1597.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1974.

Decided Jan. 22, 1975.

Rehearing and Rehearing En Banc Denied Feb. 5, 1975.

Certiorari Denied May 27, 1975.

See 95 S.Ct. 1993.

Randolph E. Schum, St. Louis, Mo., for appellant.

Donald J. Stohr, U. S. Atty., Thomas E. Loraine, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY and HEANEY, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

LAY, Circuit Judge.

 The essential issue presented on this appeal is the reasonableness of the search of an automobile after it was stopped for a traffic offense and a frisk of the defendant-passenger produced a .16-gauge shotgun shell. The search of the automobile produced an unregistered firearm which led to the defendant's conviction of possessing an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871. We affirm the judgment of conviction.[1]

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The defendant has raised several other points of error, which we summarily reject as having no substantial merit; he asserts that:

(a) Two jurors employed by the federal government should have been removed for cause solely by reason of their employment, but see Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950); Frazier v. United States, 335 U.S. 497, 508–512, 69 S.Ct. 201, 93 L.Ed. 187 (1948); United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936).

(b) The court erred in admitting the certification record from the Bureau of Alcohol, Tobacco and Firearms into evidence to show the shotgun in question to be unregistered, but see United States v. Gardner, 448 F.2d 617, 620–621 (7th Cir. 1971); United States v. Mix, 446 F.2d 615, 621–623 (5th Cir. 1971); United States v. Thompson, 420 F.2d 536, 544–545 (3d Cir. 1970).

(c) The court erred in permitting the government to examine Luther Murrell, the driver of the vehicle in which the shotgun was found, as a hostile witness. Even assuming this contention to be true, our examination of the record reveals that questions asked by the government after the court permitted him to be treated as a hostile witness were inconsequential and not damaging to the defendant. Thus, the claim is rejected for failing to show prejudice to the defendant.

(d) The court erred in allowing a government witness to testify concerning an alleged test firing of the shotgun since the government had previously denied that any "scientific tests or experiments" had been made. The testimony concerned the firing of the shotgun to determine if it were operable. We again fail to see the prejudice arising from such testimony. At least, none is demonstrated.

(e) The evidence is insufficient to sustain the verdict. Our review of the record requires a contrary conclusion. Cf. United States v. Craven, 478 F.2d 1329 (5th Cir.),

The facts surrounding the search were developed during a suppression hearing. The same facts were adduced by the government during the trial. On November 26, 1973, two St. Louis police officers, Lineback ·and Sheldon, were on cruiser patrol duty when they observed a 1964 Fairlane station wagon with three black male occupants as it made an illegal U-turn near 5400 Lillian Street in St. Louis. They turned to follow the vehicle, and when they noticed that it also violated a major intersection stop, decided to pull it over and ticket the driver for these traffic violations. Upon initial questioning it was disclosed that the driver did not have an operator's license. Thereafter, Officer Sheldon called headquarters and requested a warrant check on the vehicle's license number. He was told the vehicle was wanted in connection with a burglary which had occurred approximately three weeks earlier. At this time, he told all three occupants to get out, and when they were approximately six to eight paces from the car, Officer Lineback conducted a pat-down search for weapons. While patting down Stevens, who had been riding in the right front passenger seat, the officer "noticed a sort of lump in his left coat pocket," reached inside and found a .16-gauge shotgun shell. Officer Lineback turned and showed the shell to Officer Sheldon who went immediately "to the right front passenger seat where the subject Stevens was seated and searched beneath the seat and found a sawed-off shotgun." Officer Sheldon testified that he also noticed numerous clothing and household items in the automobile, but that these were not inventoried until the car had been towed to a police lot.[2]

■ The defendant does not question the legality of the traffic stop. The officers had a legal right to stop the vehicle and either warn or ticket its operator for the U-turn and failing to obey the stop sign. Upon his failure to produce a driver's license, the officers had the legal right to arrest him as well. *Cf.* United States v. Valentine, 427 F.2d 1344 (8th Cir. 1970). The defendant relies instead on a long line of cases which have held that there is no justification to arrest an individual simply because he is the companion of another who is legally arrested for the commission of a crime. *See* Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Linnear, 464 F.2d 355 (9th Cir. 1972); United States v. Bazinet, 462 F.2d 982, 989 (8th Cir.), cert. denied, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972); United States v. Collins, 142 U.S.App. D.C. 100, 439 F.2d 610, 615 (1971). On this basis, the defendant, who concededly had not committed any offense known to the officers at the time he was requested to get out of the automobile, claims the search of his person and the subsequent search of the auto were illegal. The government contends the search of the automobile was justified once the operator had been properly arrested for the

---

cert. denied, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973). In addition to strong circumstantial evidence, the driver testified that the defendant was the owner of the gun.

(f) The government attorney used prejudicial comments in his closing argument. The comments were objected to and the court sustained the objections and instructed the jury to disregard them. The comments were (1) that Miss White, the defendant's witness, was the defendant's girlfriend, and (2) that sawed-off shotguns could be classified with "machine guns, grenades, and bazookas." The comments do not constitute such prejudice that a jury would be likely to be unduly influenced by them. No motion for mistrial was made and the court's charge under the circumstances was all that was required.

(g) The court erred in admitting into evidence two shotgun shells without proper identification as to which was found in the defendant's pocket and which was found in the gun. The defendant stipulated that they were the two shells seized at the time of the arrest. We find this argument spurious.

2. At the suppression hearing a witness, Bill Temps, was called to verify his reporting the vehicle in early November as the one used by two black males who were observed leaving the scene of a burglary. The evidence showed that the "wanted" label for the auto should have been removed from the police computer lists since the individuals wanted for the burglary had been apprehended before November 26, 1973, the date of defendant's arrest.

traffic violations and the failure to have a driver's license.[3] The government offers United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), in support of its contention. The difficulty with this reasoning is that *Gustafson* and *Robinson* authorize only a lawful search of the person and only upon a custodial arrest. *See* 414 U.S. at 224, 94 S.Ct. 467. In the instant case, the shotgun was seized from the vehicle and not the driver's person.

*Robinson* and *Gustafson* did not overrule the established principles of *Preston*[4] and *Cooper*[5] which held, essentially, that for the search of a vehicle to be incident to an arrest, it must have a reasonable nexus to the nature of the offense upon which the arrest is based. The traffic offenses here, just as the vagrancy charge in *Preston,* did not warrant a general search of the auto once the occupants were removed from it. *See, e. g.,* Wilson v. State, 511 S.W.2d 531 (Tex.Cr.App.1974). Notwithstanding our rejection of the government's theory, we find the ensuing frisk of Stevens and the subsequent search of the car to be lawful. The principles of *Henry* must recognize the limited intrusion now sanctioned in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that a suspicious person may be subjected to a "stop and frisk" short of probable cause justifying an arrest and search incident to it. *Terry,* as interpreted in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), recognizes that

> [a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.* [392 U.S.] at 21–22, 88 S.Ct. at 1879–1881; see Gaines v. Craven, 448 F.2d 1236 (CA9 1971); United States v. Unverzagt, 424 F.2d 396 (CA8 1970).
>
> . . . The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.

407 U.S. at 146, 92 S.Ct. at 1923.

Although at the time the vehicle was pulled over for the traffic offense, there was no probable cause to search it, it was nonetheless reasonable for the officers to assume that they could and should question all the occupants on the basis of the information revealed by the warrant check. Under these circumstances, it was not unreasonable that the officers, for their own protection, cautiously required the occupants to withdraw from the vehicle where all their movements could be observed, and submit to a limited "frisk" before questioning. Officers Lineback and Sheldon had a valid reason to be somewhat wary of the occupants of a vehicle wanted in connection with a recent felony.[6]

---

3. It was only after the weapon was found that the officers announced their intent to arrest all of the subjects on the charge of possession of the weapon as well as their intent to arrest the driver for the traffic violations.

4. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

5. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

6. The fact that the vehicle was no longer actually "wanted" is immaterial to the officers' state of mind at the time the information was given to them. A police officer is entitled to view information supplied via police radio as a trustworthy basis for his actions. Klingler v. United States, 409 F.2d 299, 303 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969).

The privacy of an individual must yield to a limited investigatory intrusion of this sort where there is good reason to believe that he may be "armed and dangerous." Justice Douglas noted in his dissent in *Adams* that "[t]here is no reason why all pistols should not be barred to everyone except the police." 407 U.S. at 150, 92 S.Ct. at 1925. However, until this fact might become a legal reality, we construe *Adams* in light of *Terry* as recognition of the fact that a police officer may, for his own protection, briefly frisk a person reasonably suspected of having some nexus with a felony before questioning him. In doing so we place emphasis on the necessity for some reasonable belief that there is possible criminal activity involved. Thus, we are not faced with the concern of Judge Friendly on the Court of Appeals in *Adams* (436 F.2d at 38–39) that the frisk will become the object of the stop. Here the police had a legitimate basis for the stop, and upon the stop, further facts were obtained justifying the frisk and further investigation of the occupants. Thus, we conclude that the seizure of the shell from the defendant Stevens was the fruit of a reasonable search. The more difficult question we must decide is whether there was a legal basis for Officer Sheldon to then go to the car and open the door to search for a weapon. We conclude that this limited search was also reasonable.

 The vehicle was only 4–6 feet away from the suspects at the time the shotgun shell was discovered. The officers could reasonably infer that the shell belonged to a shotgun either concealed on the subject or in the nearby car. The officers testified to a concern for their safety occasioned by the fact that there were three suspects and only two officers. Immediately after the shell was found on Stevens, Sheldon proceeded directly to the right front seat where Stevens had been seated, reached under the seat and found the shotgun. Officer Sheldon's search was a limited one obviously made only for the purpose of discovering possible weapons. Hindsight reasoning might convince one that the officers were being overly cautious or that they could have dealt with their concern by moving the suspects farther away from the vehicle, but we must view their conduct in terms of what could be considered reasonable under the circumstances then existing. *See* United States v. Peep, 490 F.2d 903 (8th Cir. 1974).

Under the totality of the facts then existing (the operation of the vehicle by someone without a license, the reliable knowledge that the car was "wanted" in connection with a burglary allegedly committed by two black males just three weeks earlier, the visible contents of the car containing various items of personalty, and the defendant's possession of a shotgun shell), we find the limited intrusion and protective inspection of the car to be reasonable under the Fourth Amendment. *Cf.* United States v. Isham, 501 F.2d 989 (6th Cir. 1974); Wickizer v. United States, 465 F.2d 1154 (8th Cir. 1972).

Our approval here does not mean that an overall search of the vehicle would have been justified. The officer here did nothing more than open the passenger door of the car and look under the front seat. His concern was to seize any weapons which were readily accessible to the suspects. He was not searching for the incidents of a possessory crime. We see no danger for abuse in the limited inspection of a suspect's nearby auto where (a) the original stop was not pretextually made by the officers, (b) the additional intrusion was not justified on the basis of some unrelated minor offense committed by the driver,[7] (c) there

---

7. *Robinson* and *Gustafson* permit the search of the *person* incident to a custodial arrest not only on the basis of possible subjective fear of the arresting officer, but on well-established principles governing a search incident to lawful arrest. As the Supreme Court observed in *Robinson*:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold

existed reasonable suspicion of serious criminal activity, and (d) there were reasonable grounds to believe that the nearby vehicle might contain a concealed and dangerous weapon.

Judgment affirmed.

that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment. 414 U.S. at 235, 94 S.Ct. at 477.