UNITED STATES of America, Appellee,

v.

John Keith McCAULEY, Appellant.

No. 78–1631.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1979.

Decided May 15, 1979.

Rehearing and Rehearing En Banc
Denied July 3, 1979.

Tom P. Mendelson, University City, Mo., for appellant.

Mitchell F. Stevens, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief.

Before BRIGHT and STEPHENSON, Circuit Judges, and BOGUE, District Judge.[*]

PER CURIAM.

John Keith McCauley appeals from his conviction following a jury trial for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1976).[1] On appeal, McCauley contends that: (1) 26 U.S.C. § 5845(b), defining "machinegun" for the purposes of the National Firearms Act (Act), is unconstitutional as applied in this case; (2) the trial court erred in admitting into evidence a tape recording of a conversation between McCauley, his brother-in-law, and an undercover agent of the Bureau of Alcohol, Tobacco and Firearms (BATF); (3) the trial court erroneously allowed the Government's expert witness to give his opinion that McCauley's weapon was a machinegun covered by the Act; and (4) the trial court erred in admitting into evidence a BATF registry certificate which contained a statement that McCauley had neither applied to transfer any firearms nor paid a transfer tax on any firearms. We

---

[*] ANDREW W. BOGUE, United States District Judge, District of South Dakota, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sentenced McCauley to four years' imprisonment.

reject these arguments and affirm the conviction.

### I. *Factual Background.*

On July 3, 1978, McCauley possessed an unregistered Japanese type–96 light machinegun, which lacked the magazine necessary for automatic firing. On that date, McCauley met with Darold Hays, his brother-in-law, and Victor J. Herbert, Jr., a BATF agent, at McCauley's home in Kennett, Missouri, and agreed to sell the weapon to Herbert. BATF agents recorded that conversation and sale, by means of hidden transmitters voluntarily carried by both Hays and Herbert, and arrested McCauley immediately after the sale.

At trial McCauley conceded possession of the weapon. He contended, however, that he was under no duty to register the gun because without a magazine it could not be fired automatically, and, therefore, it was not a "machinegun" within the meaning of the registration statute.[2] McCauley also introduced expert testimony that magazines for type–96 machineguns are rare and practically impossible to acquire on the open market.

The Government, on the other hand, introduced evidence that a type–96 machinegun magazine was available at a St. Louis gun store and that, for a price of $45, a gunsmith in the St. Louis area had converted a German MG 13 magazine, which is readily obtainable on the open market, into a magazine useable in a type–96 machinegun. In addition, the Government showed that, in offering to sell the type–96 machinegun, McCauley told Herbert that he possessed a thirty-round "clip" (*i. e.,* magazine) for the gun.

### II. *Discussion.*

#### A. *Definition of "Machinegun."*

■ McCauley initially contends that one of the definitions of "machinegun" in 26 U.S.C. § 5845(b),[3] *i. e.,* a weapon "designed to shoot * * * automatically more than one shot," is unconstitutionally vague and overbroad for a strict liability statute such as the National Firearms Act. We need not address this contention here because the record establishes beyond question that the gun in McCauley's possession met the alternative test in section 5845(b), as a weapon that "can be readily restored to shoot" automatically.

#### B. *Admissibility of the Recorded Conversation.*

The district court admitted into evidence the entire tape recording of the conversation between McCauley, Hays, and BATF agent Herbert, at which the sale of the machinegun was discussed. McCauley challenges the admissibility of this recording on three grounds: (1) the recording of the conversation constituted an unreasonable search and seizure; (2) the identification at trial of the recorded voices was inadequate; and (3) the prejudicial effect of the tape recording substantially outweighed its probative value. We reject each of these contentions.

■ First, no unreasonable search or seizure occurred here, because both Hays and Herbert, participants in the conversation, consented to the recording. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

---

**2.** 26 U.S.C. § 5861(d) makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record[.]" The definition of "firearm" in 26 U.S.C. § 5845(a) includes "a machinegun," which § 5845(b) defines as

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The terms shall also include the

> frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

> In its jury instructions, the district court included only the first sentence of § 5845(b) in its definition of a machinegun.

**3.** *See* note 2 *supra.*

■ Second, the voices on the tape were sufficiently clearly identified at trial to prevent confusion by the jury, particularly in light of Herbert's testimony relating the substance of the crucial portions of the recorded conversation.

■ McCauley's third objection to the admission of the entire tape recording, that the playing of the recording unfairly prejudiced him because it contained vulgarity, racial slurs, and cavalier statements concerning past gun sales, presents a more serious question. The better· practice might have been to admit only those limited portions of the recording in which McCauley discussed the machinegun in question. However, any error in admitting other portions of the recording was harmless given the overwhelming evidence of McCauley's guilt of the crime charged.

C. *Opinion Concerning an Ultimate Issue.*

■ McCauley argues that the trial court erred in permitting the Government's expert witness to testify that, in his opinion, McCauley's weapon was a machinegun required to be registered under the Act. We find no abuse of discretion in the admission of this testimony. Under Fed.R.Evid. 704, such opinion testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

D. *The Firearms Registry Certificate.*

Finally, McCauley contends that the trial court erred in admitting into evidence a BATF registry certificate indicating that McCauley had not registered any firearms and that he had neither applied to transfer a firearm nor paid a transfer tax on any firearm. McCauley maintains that the latter part of the certificate constitutes evidence of other crimes, namely, that he sold the machinegun to Herbert without applying to transfer it or paying a transfer tax as required by 26 U.S.C. § 5812(a).

■ While the certified statement contained information in addition to that required to support the indictment for posses-sion of an unregistered firearm, that document was nonetheless relevant and admissible to establish that McCauley possessed a machinegun not registered to him in the National Firearms Registration and Transfer Record. *See United States v. Stevens,* 509 F.2d 683, 685 n.1(b) (8th Cir.), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975).

[7] The district court, at McCauley's request, might have deleted the statements in the certificate pertaining to transfer, but McCauley failed to make such a request and, in any event, no prejudice is shown. The certificate, including the statements that McCauley had not applied to transfer any firearm or paid transfer tax upon any firearm, merely sets forth the national firearms registration and transfer record of McCauley. Those statements on the certificate, standing alone, do not show that McCauley has committed any crime. Even if the reception of the surplus material in the certificate was erroneous, such error must be deemed harmless in light of the overwhelming evidence in the record of McCauley's guilt of the possession offense.

Affirmed.

## ORDER ON PETITION FOR REHEARING

In his petition for rehearing, John Keith McCauley asserts that the court, in part IIA of its opinion in this case, improperly bypassed constitutional issues he previously raised and brings to our attention *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Upon reconsideration, we agree that McCauley's constitutional arguments must be reached but conclude those contentions are without merit.

McCauley challenges on due process grounds the application in this case of the portion of the National Firearms Act (Act) defining "machinegun" as a weapon "*designed to shoot* * * * automatically more than one shot, without manual reloading, by a single function of the trigger." 26

U.S.C. § 5845(b) (1976) (emphasis added).[1] McCauley contends the challenged definition of machinegun (1) is unconstitutionally vague, i.e. fails "to give comprehensible notice of what is required or proscribed [or] to provide a sufficiently definitive standard for nonarbitrary application by the jury," and (2) permits a conviction without scienter for an innocent act, such as possession of a device which, though originally "designed to shoot" automatically, cannot now be made to do so because it lacks an irreplaceable part.

### 1. Vagueness.

█ It is " 'well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' " United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975), quoting United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). Here McCauley possessed a Japanese type–96 machinegun in working order except that the gun lacked a magazine necessary for firing more than one shot at a time. The evidence indicates that magazines for Japanese type–96 machineguns are rare, but McCauley's own expert witness testified that he possessed two such magazines, although they were not for sale. Moreover, the evidence of McCauley's conversation with a prospective purchaser of the machinegun conclusively demonstrates that McCauley did not possess the machinegun merely as a curio or ornament.

On the facts of this case, we think the challenged portion of the statute, defining "machinegun" as a weapon "designed to shoot" automatically, even taken in isolation, sufficiently advised McCauley that the mere fact that his machinegun was not then equipped with a magazine did not remove his weapon from the Act.[2] While one may conceive of marginal fact situations in which notice under this definitional language would be constitutionally inadequate, this is not such a case.[3] We therefore reject McCauley's vagueness challenge to the statute.

### 2. Scienter.

█ In United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Supreme Court rejected a blanket attack charging that the Act impermissibly imposes criminal liability for possession of unregistered firearms without a finding of criminal intent, or scienter, as to the unregistered status of the weapons. The Court characterized the Act as "a regulatory measure in the interest of the public safety," United States v. Freed, supra at 609, 91 S.Ct. at 1118, and concluded that the character of the weapons subject to the Act—"highly dangerous offensive weapons"—justifies liability under the Act without a specific finding of criminal intent.[4]

1. McCauley stands convicted under the Act of possessing an unregistered firearm, specifically, a machinegun. The entire definition of machinegun reads:

(b) Machinegun.—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. [26 U.S.C. § 5845(b).]

As the trial court included only the first sentence of § 5845(b) in its jury instructions, the jury considered only the three disjunctive definitions of machinegun contained in that sentence. Arguably, the jury's verdict may have rested on any of those disjunctive definitions.

2. In any event, we think it is beyond peradventure that the complete definition of "machinegun" in the Act, see note 1 supra, provided adequate notice to McCauley that his machinegun fell within the Act's coverage.

3. The record, even if viewed in the light most favorable to McCauley, simply fails to support McCauley's contention that his machinegun is "functionally inert" and therefore not the type of device at which Congress aimed the National Firearms Act.

4. In Freed, the defendant stood convicted of possessing unregistered hand grenades. In rejecting his claim that his lack of knowledge of

McCauley seeks to avoid *Freed* by arguing that,

[i]f literally applied, § 5845(b) makes it a severely punishable crime to possess, without consciousness of wrongdoing or evil intent, a device which, though designed to shoot as a machine gun, can't and won't because of the absence of an irreplaceable part, as the jury could have believed of the alleged firearm in this case. It cannot with reason be argued that such a device is invested with [the] inherent dangerousness of the grenades in *Freed* * * * to justify sacrificing the deeply-rooted moral notions associated with the *mens rea* requirement in our criminal law * * *.

This high-sounding argument of McCauley, however, misconceives both the import of the "designed to shoot [automatically]" language of section 5845(b) and the record in this case.

An ordinary reading of the "designed to shoot" language does not disclose the broad meaning, encompassing devices lacking "irreplaceable" parts necessary to shoot automatically, contended by McCauley. Moreover, cases arising under the pre-1968 version of the National Firearms Act, which defined a "machinegun" as "any weapon which shoots, or is *designed to shoot*, automatically * * *,"[5] indicate a narrow construction of that language. *See United States v. Leavell*, 386 F.2d 776 (4th Cir. 1967); *United States v. Lauchli*, 371 F.2d 303, 311–13 (7th Cir. 1966); *United States v. Thompson*, 202 F.Supp. 503 (N.D.Cal. 1962). No indication exists that Congress intended to alter this judicial construction of the "designed to shoot" language when it reenacted the Act, with amendments, in

1968.[6] Thus, contrary to McCauley's premise, it does not appear that the challenged portion of section 5845(b) makes punishable the possession, without criminal intent, of a device that no reasonable effort could render capable of automatic fire.

In addition, the record refutes McCauley's claim that "the jury could have believed" that his machinegun lacked an "irreplaceable" part and therefore was permanently incapable of automatic fire. As already indicated, McCauley's own evidence at best demonstrated that magazines for a Japanese type–96 machinegun are difficult—not impossible—to obtain. The record contains no evidence indicating complete unavailability of such magazines or effective substitutes.

In sum, McCauley's machinegun represents the type of highly dangerous offensive weapon placing its possessor on notice that possession of such a weapon "is not an innocent act." *United States v. Freed, supra*, 401 U.S. at 609, 91 S.Ct. 1112.

Accordingly, we reject McCauley's contentions that the conviction violated his constitutional rights.

the unregistered status of the hand grenades precluded conviction, the Court stated that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *United States v. Freed, supra*, 401 U.S. at 609, 91 S.Ct. at 1118.

**5.** Former 26 U.S.C. § 5848(2) (emphasis added). Congress incorporated the language of this definition, with certain additions, in the 1968 amended version of the Act. *See* 26 U.S.C. § 5845 (1976).

**6.** Congress in 1968 did, however, extend the coverage of the Act by adding to the definition of "machinegun" the language "can be readily restored to shoot" and the second sentence now appearing in 26 U.S.C. § 5845(b), *see* note 1 *supra*. *See* Gun Control Act of 1968, Conf. Rep. No. 1956, 90th Cong., 2d Sess. ——, [1968] U.S.Code Cong. & Admin.News, pp. 4426, 4434.