780 A.2d 1219

**David POWELL**

v.

**STATE of Maryland.**

No. 2073, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Sept. 11, 2001.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), for appellee.

Submitted before DAVIS, KENNEY, DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, Judge.

In the Circuit Court for Baltimore City (Mitchell, J.), sitting without a jury, David Powell, the appellant, was convicted of unlawful possession of a handgun, on an agreed statement of facts. The court sentenced him to three years' imprisonment. On appeal, the appellant asks whether the trial court erred in finding that his weapon met the statutory definition of a handgun.

## FACTS

On April 19, 2000, at about 7 a.m., Officer R.J. Mayfield responded to a report of an assault at Dillon and South Haven Streets, in Baltimore City.[1] Upon arriving at that location, he

---

1. Officer Mayfield's first name does not appear in the record.

saw the appellant standing on some railroad tracks about 50 yards away. The officer got out of his patrol car and called for the appellant to come to him. Instead, the appellant took off running. Officer Mayfield gave chase on foot.

While chasing the appellant, Officer Mayfield noticed the left side of the appellant's jacket swinging open, as if a heavy object was inside. He then saw the appellant grab the left pocket of his jacket and make a throwing motion with his left hand, toward a fence. Eventually, the officer caught up to the appellant and arrested him.

A short time later, Officer Mayfield returned to the area where he had seen the appellant make the throwing motion. There he found an unloaded WAC .32 caliber semi-automatic pistol. The pistol had fresh dirt in the barrel, where it had hit the ground.

At the appellant's trial, the State moved into evidence three Baltimore City Police Department ballistics reports analyzing the operability of the pistol. The first report, dated May 9, 2000, found the pistol, "Inoperable—cannot be fired." Under "comments," the report says: "RIGHT GRIP BROKEN, NO MAGAZINE, INOPERABLE DUE TO INTERNAL MAL-FUNCTION."

The second report, dated three months later, also states the pistol is "Inoperable—cannot be fired," and lists the same three comments. An addendum to the comment section says: "NOT OPERABLE AT TIME OF SUBMISSION DUE TO MISSING MAGAZINE, TEST FIRED USING LABORATO-RY SUPPLIED MAGAZINE."

The third report, dated two days after the second report, states the pistol is "Operable—test fired." Under "comments," the report says, "RIGHT GRIP BROKEN, NO MAGAZINE SUBMITTED, FIREARM NOT CAPABLE OF BEING FIRED AS SUBMITTED DUE TO MAGAZINE DISCONNECT MECHANISM, FIREARM WILL NOT FIRE WITHOUT MAGAZINE OR SIMILAR OBJECT EN-GAGED WITH DISCONNECT MECHANISM, MAGAZINE

SUPPLIED BY LABORATORY FOR TEST FIRING PURPOSES."

After the agreed statement of facts was read into the record and the ballistics reports were moved into evidence, the appellant moved for judgment of acquittal, arguing that the State had failed to prove that the pistol met the statutory definition of a handgun because it had not shown that the pistol was operable. The court denied the appellant's motion, ruling that the weapon was a handgun within the meaning of the controlling statute because it could be made operable with minimal exertion. The court explained:

> In this case, what was missing and, therefore, made this thing—this item "inoperable" was a part, to wit: a magazine. It was not deemed incapable of firing a projectile through the explosion of a gas. It was not rendered intrinsically inoperable because the barrel was altered and, therefore, could not emit the projectile. It was not rendered inoperable because the barrel was plugged with such an item that could not be removed—that it could not be removed and, therefore, the weapon was inoperable. What was missing was a removable or, if you will, an insertable part, to wit: a magazine.

The appellant then noted this appeal.

## DISCUSSION

■ The appellant contends that the trial court erred in ruling that the pistol he was charged with possessing was a "handgun" within the meaning of Md.Code (1996), art. 27, § 36B(b). Specifically, he argues that the pistol was not operable or readily operable so as to qualify as a firearm.

Article 27, § 36B(b) makes unlawful "wearing, carrying, or transporting" a handgun:

> Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, . . . shall be guilty of a misdemeanor; and it shall be a rebuttable

presumption that the person is knowingly transporting the handgun. . . .

Section 36F(b) defines a "handgun" as "any pistol, revolver, or other firearm capable of being concealed on the person."

In *Howell v. State,* 278 Md. 389, 396, 364 A.2d 797 (1976), the Court of Appeals held that for a weapon to meet the definition of a handgun under article 27, §§ 36B(b) and 36F(b), "it must be a firearm or it must be *readily convertible* into a firearm," that is, "a gun which could be explosive of projectiles." (Emphasis added, internal quotations omitted.) In *Wright v. State,* 70 Md.App. 616, 522 A.2d 401 (1987), we explained that there are two aspects to this definition. First, it excludes weapons not designed or constructed to fire missiles by gaseous explosion, and incapable of doing so because of their design and construction. Second, it requires even a weapon designed and constructed as a firearm to be capable of actually discharging a missile. *Id.* at 620, 522 A.2d 401. It is the second aspect of the definition that is at issue here.

In the instant case, when the pistol was found by Officer Mayfield, it did not have a magazine. In a semi-automatic (or automatic) firearm, the magazine is an insertable device that holds the bullets and automatically reloads the gun as it is fired. Most semi-automatic pistols can be fired manually, one bullet at a time, without a magazine. The pistol in this case was designed so that, when the proper magazine was inserted, the magazine would connect the internal firing mechanism. Conversely, when the magazine was removed, it would disconnect the internal firing mechanism. Thus, without the proper magazine, the pistol would not fire. The question, then, is whether a semi-automatic pistol that needs a particular magazine to be inserted to connect the weapon's internal firing mechanism is an operable handgun when that magazine is missing.

*York v. State,* 56 Md.App. 222, 467 A.2d 552 (1983), is instructive. In that case, the defendant robbed two store clerks at gunpoint. The weapon used in the robbery was a loaded "Saturday Night Special" that had been damaged so

the cylinder no longer could revolve. A ballistics report classified the weapon as "inoperable." Nevertheless, a police firearms expert testified that by using a hammer and a screwdriver or a fingernail file, he could restore the weapon to operable condition in about a minute. *Id.* at 227, 467 A.2d 552. This Court applied the law to the facts of the case and concluded that the weapon qualified as a handgun:

> The weapon used in this case ... had been designed, manufactured and presumably sold as a firearm. The infliction of death or serious bodily harm was its *raison d'etre*. The only factor detracting in any degree from its ability to perform that lethal function was a minor technical defect correctable in about a minute by the use of simple tools. Moreover, the two police witnesses who characterized the weapon as "inoperable" both in effect qualified their opinions in that regard. One ... said the gun wouldn't fire to a "95% degree of certainty" but that it might be fired if someone took two hands and tried to force the action. The other ... believed that the gun could be fired by someone with perhaps twice his strength.
>
> What this evidence shows is that the [gun] brandished by [the defendant] was in fact a firearm at the time of the offense here involved. It could be fired. We do not think the legislature, in its concern for the protection of citizens against handguns used in crimes, intended a weapon to be excluded from the handgun category because of nice calculations of percentages or the relative strengths of potential users.

*Id.*

Cases from out-of-state that have examined questions similar to the one in this case also are instructive. In *Commonwealth v. Bartholomew*, 326 Mass. 218, 93 N.E.2d 551 (1950), the defendant was convicted of possession of a machine gun. He argued on appeal that because the gun was missing a firing pin it did not qualify as a machine gun. The Supreme Court of Massachusetts disagreed. In affirming the conviction, it held that when a weapon designed for firing projectiles can, "with a relatively slight repair, replacement, or adjust-

ment," become an "effective weapon," it has not lost its initial character as a firearm. *Id.* at 552. Accordingly, absence of what the court concluded was an easily replaceable firing pin did not make the weapon something other than a machine gun.

Six years after deciding *Bartholomew,* the Supreme Court of Massachusetts held in *Commonwealth v. Colton,* 333 Mass. 607, 132 N.E.2d 398 (1956), that a weapon did not lose its character as a machine gun when it was missing a clip or magazine, "any more than absence of a bullet would destroy the character of a rifle." *Id.* at 399. *See also United States v. Woodfolk,* 656 A.2d 1145 (D.C.App.1995) (holding that an automatic weapon that had a bent magazine, and therefore only could fire one bullet at a time, nevertheless qualified as a "machine gun," defined as a weapon firing 12 shots without unloading, because when a new and properly functioning magazine was inserted, it fired 13 shots); *United States v. Melancon,* 462 F.2d 82, 95 (5th Cir.), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972) (conviction for possessing a machine gun, even though the weapon was missing a magazine and could only fire a single shot; jury could infer that with a magazine inserted, weapon would become fully automatic).

Finally, in *United States v. McCauley,* 601 F.2d 336 (8th Cir.1979), the defendant was convicted of possessing an unregistered firearm, namely, a machine gun. The machine gun he had possessed was lacking a magazine necessary for automatic firing, however. The pertinent statutory definition of "machine-gun" was "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* at 338. The evidence demonstrated that the proper magazine for the type of weapon the defendant possessed was difficult, but not impossible, to obtain. The court held that without evidence the magazine or an effective substitute was "complete[ly] unavailab[le]," the weapon met the statutory definition of "machine-gun." *Id.* at 341.

The appellant argues that "[t]he fact that the weapon had to be tested on three separate occasions establishes that the weapon was not 'readily convertible' to a firearm," and that because the police technicians had difficulty finding a magazine to make the weapon "operable," it could not be converted into a "weapon capable of firing a projectile" within a "minute's time," as was the case in *York*. We disagree with the appellant's analysis and are persuaded that the pistol in this case met the definition of a "handgun."

*Howell v. State, supra,* makes clear that for a weapon to be a "handgun," it must be a firearm; and for a weapon to be a firearm, it must function as a firearm or be "readily convertible into a firearm." 278 Md. at 396, 364 A.2d 797. In *York*, the weapon in question was damaged. In deciding whether it was readily convertible to a firearm, this Court emphasized that the weapon had kept its initial characteristics as a firearm and could be made to fire with a simple correction or adjustment. In the case at bar, the weapon was not damaged; rather, it was missing a part necessary to make it fire. Once the part was available, however, the weapon readily could be made to fire—just as the weapon in *York* readily could be made to fire with a simple correction or adjustment.

We are not of the view that the difficulty the police might have encountered in locating the proper magazine for the weapon had a bearing on whether the weapon was "readily convertible into a firearm." In cases such as *York* and *Bartholomew, supra,* 93 N.E.2d 551, in which the weapon was damaged or was defective, *i.e.,* missing a part not meant to be removed, the difficulty involved in restoring the weapon to working condition—either by fixing its damaged part or replacing its missing part—had a bearing on whether the weapon was operable; and the ease of obtaining a replacement part was a relevant factor in that inquiry. One would not expect the weapon's owner to have special knowledge about repairing the weapon or replacing its missing part, as that would not be a part of the routine maintenance of the weapon.

By contrast, in cases such as *Colton*, 132 N.E.2d 398, *Woodfolk*, 656 A.2d 1145, *Melancon*, 462 F.2d 82, and *McCauley*, 601 F.2d 336, in which the weapon was not capable of being fired (or fired automatically) because it was missing an insertable part meant to be removed and replaced by the operator, the courts did not focus on the degree of availability of the replacement part when assessing operability. In those cases, even though a third party might have had difficulty finding the precise part necessary to make the weapon operable, the fact-finder permissibly could infer that the weapon's owner, knowing the part in question to be removable and expecting it to be removed, would be sufficiently familiar with the part so as not to have difficulty obtaining it.

The case at bar falls into the second category. The magazine for the weapon in question was not a "missing part" in the sense of being a non-removable part that, through defect or damage, no longer was present. The magazine was an insertable and hence removable part that the appellant would have expected to take out of the gun from time to time. The trial court, as fact-finder, permissibly could infer that the appellant was familiar with the proper magazine for his weapon, and therefore could obtain it with less difficulty than could the police ballistics experts, who were not familiar with it. So long as there was evidence that it was possible to obtain a replacement magazine (which there was), the weapon qualified as being "readily convertible to a firearm." The circuit court properly determined, therefore, that the weapon met the definition of a handgun under the governing statute.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**