OPINION
{¶ 1} Defendant-Appellant, Karma Ross, appeals from her conviction of possession of crack cocaine in the Montgomery County Court of Common Pleas pursuant to her no-contest plea. *Page 2 
 {¶ 2} In her sole assignment of error, Ross contends that "[t]he trial court erred in not ordering the evidence suppressed because the officers lacked a reasonable suspicion to pat search Appellant; therefore, the conviction should be reversed."
 {¶ 3} The following facts were adduced from the evidence at the suppression hearing. On June 6, 2006, Lieutenant Beane of the Dayton Police Department instructed Dayton police officers to be on the lookout for a gray Dodge Magnum bearing a partial license plate number D T and possibly X because it was suspected of being involved in a shooting on Tennyson Street on June 6. Lieutenant Beane further instructed officers to stop any vehicle matching the description and to identify the occupants. On June 10, 2006, sometime after 4 p.m., Officers Christopher Cornwell and Tiffany Conley spotted a vehicle matching the description heading southbound on Salem Avenue near the intersection of Salem and Ravenwood.[1] The officers called for backup and then continued to follow the vehicle southbound on Salem until backup arrived. The vehicle then changed lanes without signaling, and the officers pulled the car over. Officer Cornwell approached the driver side of the vehicle while Officer Conley and Officer Saunders approached the passenger side of the vehicle. The driver of the vehicle reported to Officer Cornwell that he did not have a license and that he knew that the vehicle or one similar to it had been used in a shooting and that the police were looking for it. Cornwell asked the driver to step out of the car, and he patted him down for his safety. After placing him in his cruiser, Cornwell confirmed that the driver was driving under suspension, and he placed him under arrest. He also cited him for failing *Page 3 
to properly signal his change of lanes.
 {¶ 4} Officers Conley and Saunders had Ross, who was the front passenger, and Bailey, who was the rear passenger, exit the vehicle because the car was not registered to the driver and it was going to be towed. While Officer Conley walked toward Ross, she noticed a large round bulge — a little larger than a baseball — between the Appellant's breasts. Conley testified she thought it could be a weapon or drugs. Officer Conley asked the Appellant what the bulge was, but she did not respond. Officer Conley proceeded with the pat down around Ross's legs and asked the Appellant a second time, to which she responded, "Drugs." At that point, Officer Conley patted the object and felt what appeared to be a hard object she recognized as crack cocaine, as well as a softer object. Conley then retrieved the object from inside the Appellant's blouse and identified it as crack cocaine and powder cocaine. Appellant was then read her rights. Officer Conley asked the Appellant if the drugs belonged to her, and the Appellant said, "No." The Appellant was then placed in a police cruiser and taken to jail.
 {¶ 5} The grand jury indicted Ross on July 3, 2006 for one count of possession of cocaine in an amount that exceeded twenty-five grams but was less than one hundred grams and for one count of possession of crack cocaine in an amount that exceeded ten grams but was less than twenty-five grams. On August 2, 2006, Ross filed a motion to suppress. A hearing on the motion was held August 23, 2006. On September 12, 2006, Judge Gorman issued an order suppressing Ross's statement made during the pat down that the bulge contained drugs. However, the order denied the motion to suppress as to the seized drugs, and Ross then entered her no-contest plea. Appellant was sentenced to two years in prison, suspension of her driver's license for six months, and *Page 4 
fined $7,500.
 {¶ 6} On appeal, Ross raises several arguments in support of her assignment of error. First, she contends that the prosecution presented no information about who the possible shooter might have been or what his or her relation was to the car. Second, she asserts that even if the officers could reasonably detain the car's driver in order to investigate the shooting, it was unreasonable for the officers to suspect a passenger of criminal activity. Third, it was unreasonable for the officer to think that the bulge the way she described it was a weapon. Finally, Ross contends that the officer did not have reasonable suspicion to think that the bulge contained narcotics.
 {¶ 7} The lower court concluded that Officer Conley was justified in conducting the pat down search of Appellant. The court found three justifications for the pat down search. First, the officers were investigating the possibility that the vehicle was used in a shooting. Second, there was a traffic violation for which the driver was arrested. Finally, Officer Conley saw a bulge on Ross that she believed could be a weapon or contraband.
 {¶ 8} When considering a motion to suppress, the trial court is the trier of fact and as such it is in the best position to resolve conflicts in the evidence, determine the credibility of the witnesses, and to determine the weight to be given to the witness testimony.State v. Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Reviewing the trial court's decision requires the appellate court to accept the trial court's factual findings if they are supported by competent evidence in the record. Id. Accepting those facts as true, the reviewing court must then independently determine, *Page 5 
as a matter of law and without deference to the trial court's conclusion, whether the trial court applied the correct legal standard to the facts of the case. Id.
 {¶ 9} Ross argues that the trial court should have suppressed the cocaine because the police had no reason to suspect her of being involved in the shooting a few days earlier and, thus, no grounds to pat her down. We disagree. When the driver admitted to the police he knew the car was wanted in connection with a shooting, it was reasonable for the police to believe one of the occupants of the car might be the shooter. When a police officer engages in a lawful stop, he may frisk the suspect if he has reasonable grounds to believe the suspect may be armed and dangerous. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The test is whether a reasonably prudent officer in the circumstances confronting the officer would be warranted in the belief that his safety or the safety of others was in danger. Id. at 30.
 {¶ 10} The Eighth Circuit Court of Appeals determined that a pat-down search conducted on a passenger of a vehicle initially stopped for traffic violations did not violate the Fourth Amendment in U. S. v.Stevens (C.A. 8, 1975), 509 F.2d 683. Stevens was one of multiple passengers in a car that was observed by police committing traffic violations. The officers decided to pull the car over and issue a traffic citation. Id. at 686. Initial questioning of the driver revealed that he did not have an operator's license. Id. Thereafter, a warrant check on the vehicle's license number revealed that the vehicle was wanted in connection with a burglary, which had occurred about three weeks earlier. Id. After learning that the car was suspected in a previous crime, one of the officers ordered all occupants to get out of the car, and they were patted down for weapons. The pat-down search of Stevens led to the discovery of a shotgun shell, *Page 6 
which then led to the discovery of a sawed-off shotgun in the car. Id.
 {¶ 11} In affirming Stevens' conviction for possessing an unregistered firearm, the court of appeals rejected Stevens' claim that the search of his person was unlawful because Stevens had not committed any offense known to the officers at the time he was requested to get out of the car. Id. Noting that the officers "had a valid reason to be somewhat wary of the occupants of a vehicle wanted in connection with a recent felony," the court held that "the privacy of an individual must yield to a limited investigatory intrusion of this sort where there is good reason to believe that he may be `armed and dangerous.'" Id. at 687,688.
 {¶ 12} After Officer Conley began the pat-down of the defendant and before she discovered the cocaine, she asked the defendant what was in her blouse. When Ross stated the bulge was "drugs," the officers had probable cause to arrest Ross and remove the drugs from her blouse incident to her arrest. Officer Conley was not required to "Mirandize" Ross before she asked what was in her blouse because Ross was not in custody. Berkemer v. McCarty (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. The Appellant's assignment of error is Overruled. The judgment of the trial court is Affirmed.
DONOVAN and VALEN, JJ., concur.
Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] There is nothing in the record to indicate precisely what time the stop occurred after Officer Cornwell went on duty at 4 p.m. *Page 1