UNITED STATES of America,
Plaintiff-Appellee,

v.

John Henry WILBURN,
Defendant-Appellant.

No. 76–1065.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 15, 1976.

Decided Feb. 15, 1977.

Rehearing Denied April 11, 1977.

Drew C. Arena, Asst. U. S. Atty. (James L. Treece, U. S. Atty., Daniel T. Smith, Asst. U. S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Joseph Saint-Veltri of Davies & Saint-Veltri, Denver, Colo., for defendant-appellant.

Before BARRETT and DOYLE, Circuit Judges, and CHILSON,* Senior District Judge.

CHILSON, Senior District Judge.

An indictment was returned December 3, 1970, charging the appellant-defendant with a violation of Title 26, U.S.C. § 4705(a), Sec. 7237, and Title 18, U.S.C. § 2. A guilty verdict was returned on November 25, 1975. From that conviction, defendant prosecutes this appeal.

Section 4705(a) provides:

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

* Of the District of Colorado, sitting by designation.

Insofar as here pertinent, the term "narcotic drug" is defined in Title 26, U.S.C. § 4731 as follows:

"The words 'narcotic drugs' as used in this part shall mean any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

(1) Opium, isonipecaine, coca leaves, and opiate;

(2) Any compound, manufacture, salt, derivative, or preparation of opium, isonipecaine, coca leaves, or opiate;

(3) Any substance (and any compound, manufacture, salt, derivative, or preparation thereof) which is chemically identical with any of the substances referred to in clauses (1) and (2);
. . . ."

The Government's case was based on the testimony of three witnesses: Mr. Keifer and Mr. Hanks, special agents of the then Bureau of Narcotics and Dangerous Drugs and Mr. Schreiber, a Government chemist. The special agents testified they met with the defendant on November 5, 1970, and defendant at various times on that date delivered to agent Hanks packages identified and admitted into evidence as Exhibits 1, 2, 2A and 3. A field test of the contents of the packages was positive for cocaine and the defendant was placed under arrest.

The Government chemist, Mr. Schreiber, testified to further tests he made of the contents of the packages and that the contents contained cocaine hydrochloride.

■ Insofar as § 4731 applies to cocaine, it is clear that the term "narcotic drugs" includes not only the substance produced by extraction from coca leaves but also substances produced independently by means of chemical synthesis which are chemically identical with substances obtained by extraction from coca leaves.

Defendant called two chemists, Dr. Shapiro and Dr. Wingeleth, who testified that it is possible by means of chemical synthesis alone to produce a substance similar to cocaine extracted from coca leaves, but which is not chemically identical thereto. These witnesses and defendant's counsel refer to this substance as "pseudo-cocaine." Substances obtained by extraction from coca leaves or substances obtained by independent chemical synthesis which are chemically identical with substances obtained from coca leaves are referred to as "authentic cocaine." These witnesses further testified that it was not possible by the tests which Mr. Schreiber used, to rule out the possibility that the substance here in evidence is pseudo-cocaine. The defendant asserts that the Government had the burden of proving that the substance was in fact authentic cocaine and not pseudo-cocaine.

Upon the basis of the testimony of Dr. Shapiro and Dr. Wingeleth, the defendant contends that the Court committed error in admitting Exhibits 1, 2, 2A and 3 into evidence and in denying defendant's motions for judgment of acquittal.

Mr. Schreiber, while admitting it is possible by chemical synthesis to produce a substance referred to as "pseudo-cocaine," also testified that the tests which he made were sufficient to determine that the substance here involved was "authentic cocaine" and not "pseudo-cocaine." He stated "This is the cocaine. It is not the pseudo-cocaine. A pseudo-cocaine has an infrared that is different from this." (Page 78, Volume No. IV, Original Record.)

■ This conflict in the testimony of the expert witnesses was resolved by the jury's verdict which in effect found from the evidence that from his tests, Mr. Schreiber was able to and did determine that the substance here involved was authentic cocaine and not pseudo-cocaine. The trial court was not in error in admitting Exhibits 1, 2, 2A and 3 into evidence and was not in error in denying the defendant's motions for acquittal.

It is pertinent to note that neither Dr. Shapiro nor Dr. Wingeleth examined or tested the substance here in question and they did not testify that the substance was in fact pseudo-cocaine. Their testimony was limited to their opinions that, because

of incomplete testing by Mr. Schreiber, it was possible that the substance was pseudo-cocaine and not authentic cocaine. The evidence is sufficient to sustain the jury's verdict.

■ The defendant assigns as error the following redirect examination of Mr. Schreiber by Government counsel.

"Q. You testified on direct examination that plaintiff's Exhibits 1, 2, 2A and 3 in your opinion were cocaine?

"A. That's right, Sir.

"Q. Then on cross-examination, we started talking about pseudo-cocaine.

"Are you still satisfied with your opinion that what is there is cocaine?

"A. There is no doubt in my mind, Sir; that is cocaine."

(P. 81, V, IV, Original Record.)

Defendant did not object, but nevertheless assigns this interrogation as error. In view of the cross-examination by defendant's counsel, this interrogation by Government counsel on redirect examination was not improper and the assignment of it as error is without merit.

■ With respect to the Statute § 4731, the Court instructed the jury as follows:

"Under the federal statute applicable here, narcotic drugs are defined to include cocaine which in turn is defined as any compound, manufacture, salt, derivative or preparation of coca leaves, whether produced directly or indirectly by extraction from coca leaves or independently by means of a chemical synthesis, so long as the synthetic substance is chemically identical with the cocaine produced from coca leaves."

Defendant objected to the instruction stating in his brief at page 17:

"The effect of this instruction was to equate all forms of synthetic cocaine with authentic cocaine."

We do not so read the instruction. The instruction clearly states that if the substance is independently produced by means of chemical synthesis, it must be *chemically identical* to cocaine produced from coca leaves to be a "narcotic drug" within the meaning of Sec. 4731. The objection to the foregoing instruction is without merit.

■ During the course of the jury's deliberations, the jury inquired of the Court: "Is pseudo-cocaine legally cocaine?" The trial judge then repeated his original instruction (supra) defining a narcotic drug to the jury in open court and in the presence of counsel. The adoption of this method to respond to the jury's inquiry was within the Court's discretion and does not constitute error. *Whitlock v. United States,* 429 F.2d 942 (10th Cir. 1970); *DeVault v. United States,* 338 F.2d 179 (10th Cir. 1964).

■ During the course of the jury's deliberations, the foreman of the jury sent a verbal message to the trial judge, through the bailiff, stating that the jury was unable to reach a verdict. The bailiff relayed the message to the judge who instructed the bailiff to tell the jury to continue its deliberations. The bailiff did so. At the time, neither the Government nor defense counsel were present and neither was made aware of the communication at that time. The incident occurred at about 4:30 P.M. in the afternoon and the jury returned its verdict of guilty at 5:00 P.M.

Defendant's counsel assigned error in that the trial judge's communication with the jury in the absence of counsel was a violation of Rule 43 of the Federal Rules of Criminal Procedure which states that:

"The defendant shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict . . . except as otherwise provided by this rule."

Rule 52(a) of the Federal Rules of Criminal Procedure provides:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

That a violation of Rule 43 may in some circumstances be harmless error was recognized by the Supreme Court in *Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1.

"Deprivation of a defendant's right to be present at every stage of trial is subject to the harmless error rule and exchanges between the judge and jurors will not constitute reversible error lacking showing of clear prejudice to the absent defendant. *United States v. Freed,* 460 F.2d 75 (10th Cir. 1972); *United States v. Jorgenson,* 451 F.2d 516 (10th Cir. 1971), cert. denied 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972); *Little v. United States,* 73 F.2d 861 (10th Cir. 1934)." *United States v. Baca,* 494 F.2d 424, 428 (10th Cir. 1974).

We find nothing in this incident and the manner in which the Court replied to the jury's inquiry which was prejudicial to the rights of the defendant. In the circumstances of this case, the failure of the trial judge to comply with Rule 43 was harmless error.

 During the course of selecting the jury, one of the prospective jurors, Mr. Sevier, stated to the Court:

"I was involved in a criminal case where an individual's former boyfriend of my wife harassed her, set fire to her car; the case went to trial and—I added a few things—the case went to trial.

"First of all, the defendant, I guess you would call him, he pleaded innocent by reason of insanity, and they decided that through the process that he was not legally insane. He had to go to trial, and when he went to trial, he said he was guilty. The policeman knew he was guilty, and the judge knew he was guilty, and he admitted to committing the crime. The judge knew he was guilty—both lawyers knew he was guilty. He admitted to them, but when he went to trial, they pleaded him innocent; and due to the selection of the jury, he was let go."

Defendant moved for a mistrial. The Court denied it and excused Mr. Sevier and made the following statement to the jurors and prospective jurors.

"While Mr. Chapman is taking his seat, I want to caution the persons in the jury box, and the other members of the jury panel in the courtroom with respect to what has just occurred with respect to Mr. Sevier and his making the statement. I think apparently to all of you, that the matter related to his wife, that the manner in which he has some emotional involvement, and I believe you could all see that, his statement was made with force indicating emotion behind it.

"What Mr. Sevier had to say is directly contrary to the criminal justice system, and it is directly contrary to that which I told you about in the beginning.

"And I speak to that part where he is saying or was saying that the lawyers knew the man was guilty, the Judge knew the man was guilty, and so forth.

"The question of guilt is not a matter that is determined in the Courts upon a basis other than the evidence.

"When we look at a case, the question for the jury in a case is always this: Does the evidence which the jury heard, establish guilt beyond a reasonable doubt?

"Now, that's the only standard. A person can be guilty in a moral sense, or a jury or anyone else may believe that a person is guilty of an offense, but if that guilt is not shown by the evidence, then it is the responsibility of the jury to return a verdict of not guilty regardless of what the jury might speculate, surmise, or believe are the true facts or the like, if it isn't in the evidence.

"Our entire criminal justice system is based upon the premise that no one can be convicted of a criminal offense on conjecture, surmise, suspicion, or belief independently of the evidence.

"Our criminal justice system is rooted and has been since the founding of this Republic, on the premise that nobody is found guilty unless the Government, who charges them with guilt satisfies a jury beyond a reasonable doubt on the basis of evidence in the court.

"Therefore, I am instructing you to disregard the statements made by Mr. Sevier and his statement to me." (S. Vol. II:2–3).

The Court also inquired of the jurors as follows:

"Now, are there any of you who have any disagreement with this principle at all? This is the vital and fundamental principle that I talked about in the beginning, and obviously, he had disagreement with it.

"Are there any of you affected by it at all? I want you to tell me outright. Yes, Mrs. Valdez."

JUROR VALDEZ: "I had a brother, also, but he was convicted of a criminal offense, and I don't think I could—"

THE COURT: "All right. We appreciate you telling us about that."

(Juror excused.) (S. Vol. II:3–4).

No other jurors on the panel responded to the Court's question.

From this record, we find no abuse of discretion on the part of the trial court. The Court, confronted by the situation created by Mr. Sevier's statement, acted carefully and with caution. Absent a clear showing of an abuse of the trial court's discretion, the trial court's determination of the qualifications of jurors will not be disrupted on appeal. *United States v. Mason*, 440 F.2d 1293, 1298 (10th Cir. 1971). We find no abuse of discretion by the trial judge.

■ On December 1, 1975, several days after the jury had rendered its verdict and had been discharged, defendant filed with the Court a motion to interview jurors upon the grounds "That upon best information and belief, certain jury misconduct occurred prior to rendering of the verdict _ _ _" and "That it appeared to undersigned counsel that certain jurors desired to contact and speak with him subsequent to the return of the verdict _ _ _," but consistent with the policy of the Court, counsel refrained from talking to them.

The allegations contained in the motion are of such a vague and indefinite character that it was not an abuse of discretion by the trial court to deny the motion for the interview.

The denial of the motion did not deprive the jurors of any First Amendment rights. They were free to convey to the Court in writing or otherwise, any information they may have had regarding misconduct of any of the jurors.

The denial of the motion of counsel to interview the jurors was not an abuse of discretion and does not constitute error.

■ The defendant assigned error for the refusal by the Court of his tendered instruction on "specific intent," a tendered instruction to the effect that the Government was required to prove beyond a reasonable doubt that a special order form was offered by the Government to the potential violator, and a tendered instruction that the burden was upon the prosecution to prove that the cocaine introduced into evidence was in fact authentic cocaine.

The defendant was not entitled to a "specific intent" instruction. It has long been held that, under the narcotics acts of the Federal Government, criminal intent is not an element of the offense of selling narcotic drugs in violation of the narcotics laws. *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *Davis v. United States*, 306 F.2d 317 (8th Cir. 1962).

The defendant's argument that the Government must prove that a special order form was offered to a potential violator is without authority to support it and is without merit. The Government has no such burden.

■ With respect to the burden of proof imposed upon the Government to prove the substance in Exhibits 1, 2, 2A and 3 was "authentic cocaine," the Court in its instructions defined the essential elements of the offense charged and instructed the jury that the burden of proof was upon the Government to prove each of the essential elements beyond a reasonable doubt. The failure to give the defendants tendered instruction was not error.

The defendant's conviction is affirmed.