**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jessie BUCHANAN,
Defendant-Appellant.**

No. 84–1558.

United States Court of Appeals,
Tenth Circuit.

March 18, 1986.

Ronald H. Mook, Tulsa, Okl. (Thomas E. Salisbury, Sand Springs, Okl., was also on brief), for defendant-appellant.

Sara Criscitelli, Atty., Dept. of Justice, Washington, D.C. (Donn F. Baker, Acting U.S. Atty., E.D. of Okl., was also on brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and DOYLE,* Circuit Judges.

HOLLOWAY, Chief Judge.

The defendant, Jessie Buchanan, timely appeals his conviction for manufacture and possession of an unregistered firearm, 26 U.S.C. § 5861(d) & (f);[1] and for conspiracy to commit these offenses, 18 U.S.C. § 371 (1982). We affirm.

# I

## The factual background

This case arises from an explosion at Joann Huffman's trailer home in Broken Bow, Oklahoma, on September 3, 1982. According to the Government's evidence, Eric Elrod and John Omstead burned the house at the defendant's instructions. Considered in the light most favorable to the Government at this juncture, the record tends to show the following facts:

Elrod was driving Omstead and another companion, Kathy Bunch, in his father's truck on September 1, 1982. The defendant Buchanan saw them outside a convenience store and invited Elrod into his car. Elrod got in and talked with the defendant. During that conversation, the defendant offered Elrod $800 to burn Huffman's trailer. Elrod accepted, receiving $400 as a downpayment. Tr. 128, 130–31, 139, 201.

A few minutes later, Elrod left the car and rejoined his friends in the truck. Elrod waved the money in Omstead's face, telling him that they were going to do a job for the defendant. Tr. 138–39, 233, 318–19. As Kathy Bunch later testified, the job involved "something like [the] flick of a light switch and then blow something." Tr. 319.

Two days later, Elrod drove Omstead to Bonnie Hyslope's house. The two men went in her backyard and built a firebomb, which consisted of a plastic milk container filled with gasoline and charcoal fluid. Tr. 148–49, 238. Elrod sealed the device with a fuse made out of rags. They placed the device in the truck and drove to Huffman's trailer. Tr. 151, 238. Elrod knocked on the door to see if she was home, and Omstead checked with her neighbors. Satisfied that the trailer was unoccupied, Elrod lit the bomb and dropped it through a broken window. Tr. 153–54, 238, 240. They drove away as the trailer burned.

The defendant Buchanan took the stand and denied having offered money to Elrod or Omstead, or suggesting that Huffman's trailer be burned. He thus vigorously denied his guilt in any transactions charged in the three counts of the indictment.

On appeal, the defendant argues that the trial court erred: (1) by failing to dismiss the entire jury panel after it was exposed to prejudicial remarks by a venireman and denying a mistrial; (2) by allowing the Government to attack the defendant's character during its case-in-chief; (3) by failing to dismiss the indictment due to an Assistant United States Attorney's misstatements of law to the grand jury that returned the indictment; (4) by failing to order a judgment of acquittal due to insufficient evidence; (5) by improperly admitting hearsay testimony under the co-conspirator exception of Fed.R.Evid. 801(d)(2)(E); (6) by refusing to strike Kathy Bunch's testimony after she admitted discussing the case with other witnesses who

---

* The Honorable William E. Doyle heard the argument of the appeal but has not participated in this matter since December 31, 1985.

1. This statute provides in pertinent part: "It shall be unlawful for any person ... (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or ... (f) to make a firearm in violation of the provisions of this chapter...." 26 U.S.C. § 5861(d) & (f) (1982).

had been sequestered under Fed.R.Evid. 615; (7) by allowing a Government witness to testify regarding a legal conclusion that the explosive device was a "firearm" requiring registration; and (8) by failing to order a mistrial due to prosecutorial and judicial misconduct.

## II

### Comments by the juror during voir dire

During voir dire of the jury, the court asked a panel member whether he "kn[e]w of any reason [he] couldn't be fair and impartial in this matter." Tr. 38. He answered "yes," explaining as follows: "In the last five years my mobile home has been vandalized three times and I have had real estate burned." Tr. 38. There was some laughter by spectators. Defense counsel moved for a mistrial, arguing at the bench that prejudice from the remarks was irreparable. The trial judge denied the motion for a mistrial, excusing the venireman for cause and admonishing the remaining panel members to disregard his statement. Tr. 39.

 Absent an abuse of discretion, the trial court's determination of the qualifications of jurors will not be disturbed. *E.g., United States v. Wilburn,* 549 F.2d 734, 739 (10th Cir.1977); *United States v. Mason,* 440 F.2d 1293, 1298 (10th Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971). We do not think a showing of abuse of discretion has been made here. The venireman's remark did not constitute an opinion on the defendant's guilt or the veracity of anyone involved in the case. *See United States v. Teqzes,* 715 F.2d 505, 508 (11th Cir.1983); *United States v. Vargas-Rios,* 607 F.2d 831, 837 (9th Cir.1979). The trial judge admonished the other panel members to disregard the remark. *See United States v. Warren,* 594 F.2d 1046, 1049 (5th Cir. 1979). Under these circumstances, we think the trial court did not err in refusing to grant a mistrial.[2]

## III

### Evidentiary rulings

The defendant challenges four evidentiary rulings by the trial court.

### A.

### Character evidence

First, the defendant argues that the trial court improperly admitted evidence regarding his character. The evidence in question was introduced during the direct examination of Gwen Whitten and her mother. The two women testified generally about the defendant's hostility toward them. Tr. 60, 62, 73, 83, 102. They also testified about three incidents that occurred shortly before Huffman's trailer was burned, including the spanking of his step-daughter.[3] The defendant argues that the evidence was an inadmissible effort to show a criminal disposition and unduly prejudicial. We reject both contentions.

---

**2.** We addressed a similar situation in *United States v. Wilburn,* 549 F.2d 734 (10th Cir.1977). In *Wilburn,* a prospective juror stated during voir dire that his wife had been victimized by arson and that the defendant had been released although the judge and both lawyers knew that he was guilty. The trial court excused the individual and admonished the panel to disregard his statement. *Id.* at 738. We held that the trial court acted within its discretion in refusing to strike the entire panel. *Id.* at 739.

**3.** The first incident took place in the trailer about a year earlier. Tr. 86–87. The defendant quarrelled with his step-daughter and began to spank her. Huffman intervened, telling him to stop "because she wasn't his and he didn't sup-

port her and he was not going to whip her, not in [Huffman's] house." Tr. 87–88. According to Huffman, the defendant stopped and left the house. Tr. 88.

The second incident occurred about three months before the fire. Tr. 67, 89. Whitten had checked into a local hospital to have a tubal ligation. Tr. 67, 89. The defendant rushed to her room, arguing with the two women in an effort to stop the operation. Tr. 69, 90. After Huffman told the defendant to leave, he held up a roll of money and said "I've got you right here." Tr. 69, 90.

About a month later, the defendant told Whitten: "I love you and I'm going to get to you through someone you love." Tr. 66.

Evidence regarding prior misconduct, other than that charged, is inadmissible to show that the defendant had a criminal disposition. Fed.R.Evid. 404(b);[4] *see Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). The rule does not require exclusion, however, when the evidence is also probative of the defendant's motive or intent. Fed.R.Evid. 404(b); *see, e.g., United States v. Haskins*, 737 F.2d 844, 848 (10th Cir.1984). The court relied on this exception in admitting evidence of the defendant's prior misconduct. Tr. 575. We think the ruling was within the trial court's discretion.

The trial court was also justified in holding that the evidence was more probative than prejudicial. *See United States v. Shepherd*, 739 F.2d 510, 512 (10th Cir.1984) (evidence admitted under Fed.R.Evid. 404(b) must also satisfy balancing test contained in Fed.R.Evid. 403). The threats against Ms. Huffman had substantial probative value, for they had some relevance to the defendant's alleged solicitation of Elrod. *See United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir.1983) (evidence that defendant previously beat ex-wife properly admitted in murder prosecution); *United States v. Bufalino*, 683 F.2d 639, 647 (2d Cir.1982) (extortion threat properly admitted), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). The prior misconduct occurred within one year of the fire.[5] *See United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.1983) (misconduct occurring over three years earlier not too remote), *cert. denied*, 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983). Further, the trial court instructed the jury that the

evidence was relevant only insofar as it shed light on the defendant's "intent, motive, knowledge, plan, absence of mistake or accident." Tr. 575. We think the admonition alleviated any danger that the jury would consider the evidence as relevant to the defendant's criminal disposition.

We conclude that the trial court acted within its discretion in admitting the evidence here regarding the defendant's prior misconduct.

### B.

### Hearsay evidence

The defendant argues that the trial court improperly allowed Elrod and Omstead to give hearsay testimony. We will consider the claims of error separately.

First, defendant says that over his objection on hearsay grounds, Elrod was permitted to testify about statements he had made to Omstead outside of the defendant's presence. Tr. 132–38; Brief of Appellant at 28. Elrod had earlier testified that the defendant Buchanan had called Elrod over to his car several nights before the fire, told him he wanted Elrod to burn Huffman's trailer, promised to give him $800 for this job, and then gave him $400. Tr. 125–31.

When Elrod turned to testifying about returning to his truck and his statements made to Omstead and Bunch, specifically the prosecuting attorney asked Elrod whether he had told Omstead and Bunch about how much money he had gotten, and at that point defense counsel objected that this would be hearsay. Tr. 132. After

---

**4.** Rule 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Fed.R.Evid. 404(b).

**5.** In his brief, the defendant asserts that the acts took place more than one year before the fire. He cites no examples, however, and we have

found none in the record. On one occasion, the Government began to introduce testimony about an incident that occurred some three years before the fire. Tr. 83–84. The trial court, however, promptly instructed the prosecution to discontinue this line of questioning, reasoning that the incident was too remote. Tr. 84. Similarly, Elrod testified that Buchanan had once asked him to vandalize Whitten and Huffman's gas tanks. Tr. 164. No time period was fixed, however, and the defendant did not object. Tr. 164.

argument for some time on the law, the trial judge made findings and announced his ruling. He found that there was substantial evidence that it is more likely than not that a conspiracy existed, that the declarant Elrod and the defendant against whom the co-conspirator's statement was offered were members of the conspiracy, and that the statement was made during the course of and in furtherance of the objects of the conspiracy. The court ruled that the evidence could be presented. Then Elrod related that he had told Omstead and Bunch that he had gotten $40 from the defendant, and Elrod said that he had put the money in his pocket. Tr. 139.

After the evidence was concluded, the trial judge stated that no motion had been made (for further findings), but that he had earlier found as a factual matter that the Government had shown by a preponderance of the evidence, independent of the statements, that a conspiracy existed. The judge then found again that the co-conspirators and the defendant against whom the statements were offered were members of the conspiracy, and that the statements were made during the course of and in furtherance of the conspiracy. Tr. 582–83.

The appellate argument made by the defendant with respect to this testimony was that there was not sufficient proof of the existence of the conspiracy alleged to support the court's findings and the ruling admitting the hearsay statement by Elrod. More specifically the defendant argues that there was no proof of a "federal conspiracy," particularly arguing that there was no evidence of a conspiracy to use a destructive device that would be classified as a firearm requiring federal registration.

The statement by Elrod in the truck about the money paid by the defendant is perhaps questionable as not, at that point, being shown to be in furtherance of the conspiracy. Nevertheless, the circumstances point in that direction and we conclude that the evidence as a whole supports the findings made and the admission of Elrod's statements complained of in accordance with the procedure of *United States v.*

*Petersen,* 611 F.2d 1313, 1330–31 (10th Cir. 1979). Moreover, we feel there is no substance to the argument that the conspiracy found by the judge as a basis for application of the co-conspirator exception, under Rule 801(d)(2)(E), must be a "federal conspiracy." *See United States v. Kendall,* 665 F.2d 126, 131 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982); *see also United States v. Magnuson,* 680 F.2d 56, 58 (8th Cir.1982) (per curiam) (holding that hearsay declarations were properly admitted under Rule 801(d)(2)(E) where evidence linked co-defendants to arson conspiracy). The rationale for the co-conspirator hearsay exception would apply without such special proof that a "federal conspiracy" had been demonstrated. *See United States v. Coppola,* 526 F.2d 764, 770–71 (10th Cir.1975). In sum, we reject the objections to the statement made by Elrod.

We turn now to the statement made by Omstead. During the direct examination of Omstead, he was asked about the first time that anything was said about the trailer and its burning. He began to testify that they (Elrod, Omstead and Bunch) stopped and that Elrod had gotten out and talked to the defendant Buchanan, and that Elrod came back and said that "we was going to make some money." Tr. 233. At that point, defense counsel objected to anything which Mr. Elrod had said on the same hearsay grounds, with the same arguments previously discussed in detail with the trial judge. Tr. 233.

We have related earlier the first findings and ruling on the co-conspirator exception made by the judge. Tr. 138. Those findings addressed the participation by defendant Buchanan and Elrod in a conspiracy. The trial court, however, extended the findings to include Omstead under a procedure he announced later during Omstead's testimony that if the evidence brought him within that conspiracy concerning burning of the trailer, then the further finding was not explicitly needed. That proof was made and thus the findings were extended

to include a conspiracy by defendant Buchanan, Elrod and Omstead. Tr. 231–32.

We again reject the hearsay argument. The statement that was related by Omstead was that Elrod had come back to the truck where Omstead and Bunch were waiting, and that Elrod said they were going to make some money. Tr. 233. We again are satisfied that the trial court's preliminary findings on admission of the evidence under the co-conspirator exception, and then the additional findings made at the end of the trial to the same effect, were all supported by the record as a whole. Therefore, the findings required by the *Petersen* case relating to the co-conspirator exception were not in error. As noted, at the first of the conversations by defendant Buchanan with Elrod, defendant Buchanan had promised to pay Elrod $800 for burning the trailer. This evidence was before the court when the initial findings were made. Then when his ultimate findings were made at the conclusion of the trial, more damaging evidence had been admitted, such as Elrod's later testimony that the defendant had actually paid him more than $800 and congratulated him on doing a "good job." Tr. 160.

In sum, we feel that the record amply supports the trial court's findings and rulings on the hearsay objections.

### C.

#### Testimony on a legal conclusion

■ The defendant also argues that the trial court erred in allowing Officer Tilley of the Bureau of Alcohol, Tobacco and Firearms to testify regarding a legal conclusion. The colloquy was as follows:

6. The National Firearms Act prohibits the manufacture or possession of an unregistered "firearm." 26 U.S.C. § 5861(d) & (f) (1982); *see supra* note 1. The term "firearm" is defined in § 5845. Subsection (a) states that the term includes any "destructive device." 26 U.S.C. § 5845(a) (1982). Subsection (f) defines the term "destructive device." It includes "any explosive [or] incendiary ... (A) bomb, (B) grenade, ... or (F) similar device," as well as "any combination of parts either designed or intended for use in converting any device into a destructive device ... and from which a destructive device may be readily assembled." 26 U.S.C. § 5845(f) (1982). This subsection con-

Q. The type of device that they have described here in the courtroom, would that type of a device have to be registered with the Department of Treasury, the Bureau of Alcohol, Tobacco and Firearms?

A. Yes.

Tr. 344. We conclude that the trial court acted within its discretion in admitting this testimony.

Whether the nature of a particular device is such that it must be registered is an ultimate fact question. *See United States v. Homa,* 608 F.2d 407, 409 (10th Cir.1979); *United States v. Markley,* 567 F.2d 523, 527 (1st Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978); *United States v. Kiliyan,* 456 F.2d 555, 557 (8th Cir.1972); *Bryan v. United States,* 373 F.2d 403, 407 (5th Cir.1967). Officer Tilley's testimony is not objectionable simply because it goes to an "ultimate issue to be decided by the trier of fact." Fed.R. Evid. 704; *see United States v. Logan,* 641 F.2d 860, 863 (10th Cir.1981). Instead, the proper inquiry is whether the testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Such a determination rests within the sound discretion of the trial court. *See United States v. Barton,* 731 F.2d 669, 672 (10th Cir.1984). The question before the jury involved the consideration of a particular homemade device against an array of statutory definitions.[6] Under such circumstances, the courts have admitted this sort of testimony.[7] *United States v. McCauley,* 601 F.2d 336, 339 (8th Cir.1979) (per curiam); *Bryan v. United States,* 373 F.2d 403, 406–07 (5th Cir.1967).

tains a caveat: "The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon...." 26 U.S.C. § 5845(f) (1982).

7. Federal officers have given this type of testimony in other cases involving statutory classifications of firearms. *See, e.g., United States v. Mann,* 712 F.2d 941, 942 (4th Cir.1983) (per curiam) (Government expert testified that the alleged weapon was a "machine gun" under 26 U.S.C. § 5845(b)); *United States v. Neal,* 692 F.2d 1296, 1300 (10th Cir.1982) (law enforcement officer with the Bureau of Alcohol, Tobacco and Firearms testified that the alleged weap-

The defendant argues, however, that Officer Tilley's testimony constituted an improper legal conclusion. While unadorned legal conclusions are impermissible, *see Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir.1971), courts have allowed the expression of expert opinions on ultimate issues of fact. *See, e.g., United States v. Logan,* 641 F.2d 860, 863 (10th Cir.1981). Experts are allowed to testify that certain drugs come within a particular statutory classification, *see United States v. Carroll,* 518 F.2d 187, 188 (6th Cir.1975), and that certain expenses are deductible under the federal tax laws, *see United States v. Fogg,* 652 F.2d 551, 556–57 (5th Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982).

The trial court properly instructed the jury on the statutory definition of "firearms," Tr. 566–67, and the weight to be afforded expert testimony, Tr. 575–76. No error occurred in the admission of the testimony.

## D.

### The sequestration of witnesses under Fed.R.Evid. 615

The defendant argues that the trial court erred in allowing Kathy Bunch to testify after defense counsel had invoked the rule on sequestration of witnesses and the witness had later discussed trial testimony with other witnesses.

When the first Government witness took the stand, defense counsel invoked "the rule of sequestration." Tr. 57. The judge announced that the witnesses not testifying should leave the courtroom.[8] Later Bunch, a Government witness, admitted on cross-examination that she had spoken with Elrod and Omstead during the trial about their testimony. Tr. 328. The defendant then moved to strike her testimony because she had violated the sequestration rule. Tr. 328. The trial court denied the motion, reasoning that its sequestration order properly did not prohibit discussion among the witnesses about their testimony. Tr. 328–30.

The trial judge in the instant case did not feel that the Rule or any cases prohibited the witnesses from discussing their testimony among themselves. The court was in error. While such a prohibition is not within the Rule's explicit wording,[9] we have held that it is necessary to prevent a circumvention of the Rule. *United States v. Johnston,* 578 F.2d 1352, 1355 (10th Cir.),

ons were "firearms" under 26 U.S.C. § 5845(a)); *United States v. Hernandez,* 668 F.2d 824, 829 (5th Cir.1982) (Customs Service Agent identified the alleged weapon as a "machine gun" under 26 U.S.C. § 5845(b)); *United States v. Hewitt,* 663 F.2d 1381, 1389 (11th Cir.1981) (Government's expert testified that the alleged weapon was an "explosive" under 18 U.S.C. § 844(h)); *United States v. Markley,* 567 F.2d 523, 525 (1st Cir.1977) (officer with the Bureau of Alcohol, Tobacco and Firearms testified that the alleged weapons were "explosive bombs" under 26 U.S.C. § 5845(f)), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978); *United States v. Peterson,* 475 F.2d 806, 809–810 (9th Cir.) (Treasury Department official testified that the alleged weapon was an "incendiary device" within the coverage of 26 U.S.C. § 5845(f)), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973); *United States v. Fisher,* 353 F.2d 396, 397 (5th Cir.1965) (Government officer testified that weapon was a "pistol" under 26 U.S.C. § 5848). Apart from *Bryan* and *McCauley,* however, the courts of appeals have rarely addressed the propriety of such testimony.

**8.** The court stated as follows:

The rule of exclusion has been asked for by counsel, which means that he has asked that all witnesses who are not presently testifying will need to leave the courtroom, anybody who is here who is going to be a witness will have to leave the courtroom. The reason for that is so that no one accidentally adopts the testimony of any other witness. I think it's a good rule.

You gentlemen will be responsible for seeing that none of your witnesses are here in the courtroom during the trial.

Tr. 57.

**9.** Rule 615 provides:

**Exclusion of Witnesses**

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

*cert. denied,* 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978); *United States v. Prichard,* 781 F.2d 179, 183 (10th Cir.1986). We explained in *Johnston* that "a circumvention of the Rule does occur where witnesses indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify." We further explained in *Johnston* that Rule 615 has changed the law and makes exclusion demandable as of right, instead of being merely discretionary with the trial court. 578 F.2d at 1355; *see also* 3 Weinstein's Evidence 615–16, with stated exceptions as to certain persons.

■ A failure to instruct the witnesses fully after the Rule is invoked may cause reversal. The witnesses should be clearly directed, when the Rule is invoked, that they must all leave the courtroom (with the exceptions the Rule permits), and that they are not to discuss the case or what their testimony has been or would be or what occurs in the courtroom with anyone other than counsel for either side. *See* 3 Weinstein's Evidence 615–13. Counsel know, and are responsible to the court, not to cause any indirect violation of the Rule by themselves discussing what has occurred in the courtroom with the witnesses.

■ Of course, here the witness did not directly violate the court's order because the court had failed to give the proper full instruction when the Rule was invoked. As explained, the order given was in error. We do not, however, feel that reversal is required.[10] Even if violation of a proper order under this Rule occurs, this alone does not render the witness' testimony inadmissible and its admission or exclusion is within the court's sound discretion. 3

Weinstein's Evidence 615–17. Probable prejudice should be shown for such exclusion to occur. *United States v. Prichard,* 781 F.2d at 183; *Johnston,* 578 F.2d at 1355–56.

■ Here the conversation did not involve any substantive aspects of the case. Bunch explained that the sole topic of conversation was the place of the original meeting between the defendant and Elrod. Elrod and Omstead said that the meeting had occurred outside Burke's Convenience Store, while Bunch insisted that it had taken place outside the Sonic Drive-In. Tr. 331. The three witnesses reaffirmed their original beliefs at trial. Elrod and Omstead continued to assert that the original meeting had taken place outside Burke's store, Tr. 125–27, 234, and Bunch continued to insist that it had occurred outside the Sonic Drive-In, Tr. 317, 328. The conversation did not seem to have any effect on their testimony. Finally, the trial court allowed the defense to fully explore the scope of the conversation in its cross-examination of Bunch, the deputy marshal and the case agent. Tr. 328, 331–34, 352–54, 356. Thus, the jury became fully aware of the conversation and the degree of possible effect it had on the testimony.

In sum, there was no showing of probable prejudice so as to require exclusion of Bunch's testimony and its admission was not in error.

## IV

### The claims of prejudice from actions of the trial judge and the prosecutor

The defendant argues that the prosecutor deliberately misled the jury and that

---

10. The previous day, the Government had completed its direct examination of Elrod before the lunch recess. *See* Tr. 167. After lunch the defense began its cross-examination, and the Government then called Omstead to the stand. Tr. 167.

Bunch testified that the conversation had occurred before Elrod or Omstead testified, although she "thought" it was after lunch. Tr. 333–34. The prosecution probed the matter further in its questioning of a deputy United States marshal and the Government's case agent. The

deputy marshal testified that Bunch did not visit Omstead or Elrod during the lunch recess the previous day, Tr. 355, and the agent said that the conversation occurred before Elrod or Omstead had testified, Tr. 346.

We do not think the timing of the conversation relevant to our decision. In either event, the conversation clearly occurred after the defendant's invocation of the sequestration rule. Tr. 57.

the trial judge improperly rebuked defense counsel when they sought to remedy the situation. We disagree.

■ The incident occurred during the testimony of defense witness Perry Gatlin. On direct examination, Gatlin testified that he had overheard a conversation between Elrod and his father the day after the fire. According to Gatlin, Elrod told his father to pay him for burning the trailer or he would not do another job for him. Tr. 504–05. On recross examination, Gatlin admitted that he had refused to be interviewed by Officer Tilley, the Government's case agent, prior to trial. Tr. 519–20. The prosecutor then asked Gatlin: "Well, you do realize, don't you, if you would have come forward and told this agent this story sometime before today and submitted to an interview that we could have checked a little of this out?" Tr. 520.

The defense attorney objected, stating in open court that the question did not accurately reflect "the state of facts in this case." He added that "[t]his interview was given to the prosecuting office many, many months ago." Tr. 520. The prosecutor protested the remark, and defense counsel asked to approach the bench. The trial judge responded: "No, you don't need to do that, you've been coming up here too much. Now you just make your objection, and I know how to rule on these things without coming up here. If that's true, then you may question him about it on your direct examination." Tr. 520.

A few minutes later, Gatlin left the stand and defense counsel again asked to approach the bench. This time the judge agreed. Tr. 522. At the bench, the judge began by telling defense counsel: "I hope this is more useful than the other times we have been coming up here." Tr. 522. One of the defendant's two attorneys then explained that he had given the prosecutor a copy of Gatlin's sworn statement at least three months before the trial. Counsel then complained that the prosecutor had created the false impression that he was learning about Gatlin's story for the first time. Tr. 522–23. The prosecutor agreed

that he had received the statement, but said that he had been unable to question Gatlin about the statement before the trial. Tr. 523.

The judge suggested to defense counsel that they could call Tilley to the stand to explain what had happened. Tr. 523. Counsel replied, however, that Tilley had no knowledge about their handling of Gatlin's statement. The only persons with such knowledge were the two defense attorneys and the prosecutor. The defense attorneys, however, elected not to testify so that they could continue working on the case. Tr. 525. They suggested no other remedy to the court, and the matter was ultimately dropped.

We conclude that the prosecutor's questioning of Gatlin was not designed to mislead the jury. See United States v. Pinto, 755 F.2d 150, 153 (10th Cir.1985) (quoting United States v. Harris, 542 F.2d 1283, 1307 (7th Cir.1976), cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977)); United States v. Silverstein, 737 F.2d 864, 868 (10th Cir.1984). The prosecutor was simply eliciting from Gatlin an admission that he had not submitted to cross-examination prior to trial. The questioning did not refer to Gatlin's sworn statement or suggest recent fabrication. Even though the question had implied that the prosecutor was learning about Gatlin's story for the first time, defense counsel's statement in open court effectively rebutted that notion. Under these circumstances, we do not think the Government's questioning was prejudicial. See United States v. James, 728 F.2d 465, 467–68 (10th Cir.), cert. denied, —— U.S. ——, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984); Marks v. United States, 260 F.2d 377, 383 (10th Cir.1958), cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959).

■ Similarly, we find no impropriety in the actions of the trial judge in question. The defendant points to the trial judge's two admonitions about the numerous bench conferences. The second remark was made at the bench and, hence, could not have influenced the jury. See United

*States v. Worthington,* 698 F.2d 820, 827 (6th Cir.1983).

Nor do we attach any significance to the first remark. The comment was brief and did not indicate a belief in the defendant's guilt. *See United States v. Shelton,* 736 F.2d 1397, 1404 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984). Similarly, we do not believe that the statement reflected a bias against defense counsel, for the judge had earlier denied a prosecutorial request for a bench conference in similar fashion. Tr. 266.

We find no error in these respects and feel that the admonitions to counsel were within the trial court's discretion. *United States v. Shelton,* 736 F.2d at 1404–05.

## V

### The claim of error by misstatement of law to the grand jury by the prosecuting attorney

The defendant complains of the refusal of the district court to dismiss the indictment because of a misstatement of law to the grand jury. The gist of the argument is that the prosecuting attorney advised the grand jury, in response to a question, that if one person procures another or causes him to do a particular act, then the person procuring such acts could be considered an aider and abettor even though he may not have known whether the other party used a particular means to commit the act. Brief of Appellant at 19–20.

 We find no substance to the claim of error. Such an attempt to prevent trial by attacking alleged legal errors in the grand jury proceedings is generally rejected. An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *United States v. Addington,* 471 F.2d 560, 568 (10th Cir.1973). The remedy of dismissal of indictment is an extraordinary one applied to insure proper standards of conduct by the prosecution. An indictment may be dismissed for prosecutorial misconduct so flagrant that there is some significant infringement on the grand jury's ability to exercise independent judgment. *United States v. Pino,* 708 F.2d 523, 530 (10th Cir.1983).

 Challenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face. *United States v. Addington,* 471 F.2d at 568. We likewise feel that the complaints made here would not justify dismissal of an indictment. Accordingly the claim of error is rejected.

## VI

### The sufficiency of the evidence

Finally, the defendant contends that the evidence was insufficient to support his convictions. With respect to this claim, we must examine the entire record in the light most favorable to the Government to determine whether there is evidence, direct and circumstantial, together with the reasonable inferences, from which a jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Yates,* 470 F.2d 968, 970 (10th Cir.1972).

### A.

### The conspiracy charge

 Arguably, the testimony showed the existence of two conspiracies: that the defendant Buchanan and Elrod initially agreed that Elrod would burn Huffman's trailer and be paid for this job, and then that Elrod and Omstead conspired to manufacture and possess an unregistered firearm. Defendant says that taking the evidence in the best light for the Government, as to the defendant Buchanan, there was only a showing of a conspiracy to commit arson in violation of the Oklahoma Statutes (21 O.S.1981 §§ 421(A)(1) and 1402), but not of conspiracy to commit the federal offenses of manufacturing and possessing an unregistered firearm. *See United States v. Poulos,* 667 F.2d 939, 942 (10th Cir.1982);

see also *Jordan v. United States*, 370 F.2d 126, 128 (10th Cir.1966) ("gist of a criminal conspiracy is an agreement to violate a law of the United States"), *cert. denied*, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595 (1967).

We disagree. We feel that the two agreements constituted but one basic conspiracy. The attempted distinction between the two agreements is misleading, for the three men had the one basic objective of burning Huffman's trailer. Tr. 125–30, 236–37. The use of an explosive was merely one facet of the scheme. Moreover, even if the defendant did not agree to the method, he remains an integral member of the conspiracy. *See United States v. Parnell*, 581 F.2d 1374, 1382 (10th Cir.1978). In *United States v. Johnson*, 645 F.2d 865, 868 n. 2 (10th Cir.1981), we stated:

> [T]he conviction of a co-conspirator may be sustained upon a sufficient showing of the plan and the individual's connection with it. It is not necessary that each member of the conspiracy know all of the details or be acquainted with all of the parties to the illegal scheme, as long as he is aware of its general scope.

*See also Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947) (conspiracy conviction does not require proof that defendant knew all of its details).

We note that there is evidence in the record that the defendant Buchanan did anticipate the use of some sort of destructive device. Kathy Bunch testified that the defendant had paid Elrod for a job involving "something like [the] flick of a light switch and then blow something." Tr. 319. Furthermore, after Elrod and Omstead destroyed the trailer with the device, the defendant paid them the balance of their "fee." Tr. 157. The next day the defend-ant paid an additional $200 and congratulated them on doing a "good job." Tr. 160, 243, 257–58.

In sum, the evidence supports the inference of a conspiracy including the manufacture and possession of a "destructive device" in violation of § 5861.

## B.

### The substantive offenses

We also hold that the evidence was sufficient to support the convictions on the substantive counts. The Government bore the burden of proving that the defendant knowingly manufactured and possessed an unregistered firearm in violation of 26 U.S.C. § 5861(d) & (f) (1982); *see United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971).

Since the defendant did not personally handle the device, the Government proceeded on a theory by its proof that the defendant induced or procured the commission of the offenses. *See* 18 U.S.C. § 2(a) (1982) ("[w]hoever commits an offense against the United States or . . . induces or procures its commission, is punishable as a principal"). We feel that the proof was sufficient under this theory to support the substantive convictions. The evidence showed the actions of defendant Buchanan in inducing and procuring the criminal venture, and we have noted the evidence which would support an inference of his realizing that there would be a destructive device used. *See United States v. Poulos*, 667 F.2d 939, 942 (10th Cir.1982) ("common knowledge that gasoline is highly combustible and capable of exploding"); *United States v. Beldin*, 737 F.2d 450, 453–54 (5th Cir.1984) ("common knowledge . . . that gasoline, when ignited, not only burns but may explode").[11]

---

11. Of course, the defendant might have expected Elrod to start the fire with just gasoline and matches, without the help of a mechanism to delay ignition. Such a method is so dangerous, however, that we regard this possibility as relatively insignificant. Two arson experts have explained: "Frequently a match is struck by the arsonist, but only the juvenile arsonists and the pyros—the mental cases—seem to favor this method. Other fire-setters want some delay, so they adapt the ordinary match to some timing mechanism." B. Battle & P. Weston, *Arson: A Handbook of Detection and Investigation* 20 (1954).

## VII

We conclude that the defendant has not demonstrated any reversible error and the judgment on the charges is accordingly AFFIRMED.