**F I L E D**

**UNITED STATES COURT OF APPEALS**

**September 20, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BRIAN KEITH TONY,

      Defendant-Appellant.

No. 05-2312
(District of New Mexico)
(D.C. No. CR-03-2063-MV)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is, therefore, ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Introduction

Following a jury trial, Defendant-Appellant Brian Tony, an Indian, was convicted of two counts of assault resulting in serious bodily injury and one count of aggravated burglary in Indian Country. He was sentenced by the United States District Court for the District of New Mexico to 130 months' imprisonment. Tony now appeals his convictions challenging the sufficiency of the evidence and the district court's refusal to declare a mistrial. We assert jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm**.

## II. Background

On May 2, 2000, two men entered the residence of James and Mary Whitegoat on the Navajo Indian Reservation in New Mexico and assaulted Mr. and Mrs. Whitegoat. Tony was charged in connection with the assaults several years later.[1] The four-count indictment charged Tony with assaulting Mr. Whitegoat with a dangerous weapon, in violation of 18 U.S.C. §§ 2, 113(a)(3), and 1153 (Count I); assault resulting in serious bodily injury to Mr. and Mrs. Whitegoat, in violation of 18 U.S.C. §§ 2, 113(a)(6), and 1153 (Counts II and III); and aggravated burglary, in violation of 18 U.S.C. §§ 2, 13, and 1153, and N.M. Stat. Ann. § 30-16-4 (Count IV).

At trial, Mrs. Whitegoat testified that on the day of the assaults, she and her husband were at home when two men drove up in a white, four-door vehicle.

---

[1]The second perpetrator has never been identified or charged.

According to Mrs. Whitegoat, when Mr. Whitegoat opened the front door of the residence, one of the men grabbed him and hit him with an ax. Mrs. Whitegoat testified that she walked toward the men and said, "No, my son." Mrs. Whitegoat indicated one of the men then grabbed her, threw her under a chair, and hit her in the head with the ax, knocking her unconscious. When asked in court to identify the man who assaulted her and her husband, Mrs. Whitegoat pointed to Tony, but called him "Sherman." Mrs. Whitegoat indicated she had known Tony since he was a child because Tony and his family lived in a hogan behind the Whitegoat's residence for a while.

Richard Whitegoat, one of the Whitegoat's sons, testified that after the assaults, Mr. Whitegoat drove his wife to the auto repair shop where Richard worked. Richard indicated his parents' faces were bloody and his mother's face was swollen. According to Richard, his father stated in Navajo, "Wiizii Tsoh biyaz ya'alwod."[2] A certified court interpreter translated the statement to mean "Wiizii's late son came into the house. Big Wiiz." Richard testified that he understood Wiizii's late son to mean Brian Tony.

Another Whitegoat son, James Whitegoat, also testified. James lived with his parents and left their house a few minutes before the assaults occurred. James

---

[2]Mr. Whitegoat died before trial, but not from injuries sustained in the May 2, 2000 assault. The district court admitted Mr. Whitegoat's statement to Richard as an excited utterance. *See* Fed. R. Evid. 803(2). Tony does not contest this evidentiary ruling.

testified that as he was leaving his parents' house, he saw a "dirtyish white," four-door car parked a short distance away. James indicated he had seen the vehicle before and he believed it belonged to Brian Tony. James testified he had known Tony for many years, and Tony's father's name was "Sherman."

Tony took the stand in his own defense at trial. Tony testified he had known the Whitegoats for thirty years. He indicated on the day of the assaults, he had been released from a detention center for a work release program. According to Tony, he drank alcohol throughout the day until he blacked out, and thus did not remember if he went to the Whitegoats' residence. Tony testified that at the time of the assaults, he drove a four-door, cream-colored, Oldsmobile Cutlass.

At the close of all the evidence, the jury returned a verdict finding Tony guilty as to Counts II, III, and IV of the indictment and not guilty as to Count I. The district court subsequently sentenced Tony to 130 months' imprisonment followed by three years' supervised release.

## III. Discussion

### A. Sufficiency of the Evidence

Tony argues the evidence presented at trial to prove he was the perpetrator of the crimes is insufficient.[3] This court reviews claims challenging the

---

[3]Tony filed a motion for judgment of acquittal at the close of all the evidence. The district court denied the motion in a May 26, 2005 memorandum opinion and order. Tony challenges the district court's order, but failed to attach a copy of it to his appellate brief as required by the Tenth Circuit Rules. *See* 10th

(continued...)

sufficiency of the evidence *de novo*. *United States v. Rockey*, 449 F.3d 1099, 1102 (10th Cir. 2006). "Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id*. at 1103 (quotation omitted). In reviewing the evidence, we consider both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom. *United States v. Zunie*, 444 F.3d 1230, 1233 (10th Cir. 2006). We do not, however, weigh conflicting evidence or consider the credibility of witnesses. *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000).

Mrs. Whitegoat identified Tony as the perpetrator of the assaults at trial by pointing to him. She testified she had known Tony since he was a child. Richard Whitegoat testified that when he saw his parents shortly after the assaults, his father stated "Wiizii's late son came into the house. Big Wiiz." Richard indicated he understood this statement to mean Brian Tony was the assailant. Finally, James Whitegoat told the jury he saw what he believed to be Tony's car parked near his parents' house a few minutes before the assaults.

---

[3](...continued)
Cir. R. 28.2(A)(1) (stating appellant's brief must include a copy of all pertinent district court opinions and orders even though they are also included in the appendix). Because Tony failed to include the district court's memorandum opinion and order, the government was required to attach a copy to its appellate brief. *See* 10th Cir. R. 28.2(B). The government neglected its duty as well.

Tony contested the credibility of this testimony at trial. Specifically, Tony asserted Mrs. Whitegoat's identification was unreliable because she called Tony by his father's name, Sherman, and her eyesight was poor. Tony also argued Mr. Whitegoat's alleged statement that "Wiizii's late son came into the house" could refer to any of Brian Tony's four brothers. Tony also pointed out there was no physical evidence linking him to the crime scene. In particular, footprints and tire tracks found at the Whitegoat's residence were never matched to Tony or his vehicle. In his defense, Tony testified he had been drinking alcohol on the day of the assaults and blacked out.

Our role as an appellate court is not to judge the credibility of witnesses. *McKissick*, 204 F.3d at 1289–90. Instead, we ask only "whether the evidence, if believed, would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (quotation and alteration omitted). Under this narrow standard of review, Mrs. Whitegoat's identification of Tony as the assailant and Richard's testimony that he understood his father's statement as identifying Brian Tony as the assailant are sufficient to permit a reasonable jury to find Tony guilty beyond a reasonable doubt.

**B. Motions for Mistrial**

During the trial, Tony moved for a mistrial on two occasions. The district court denied both requests, and Tony appeals. "In determining whether to grant a mistrial, a district judge must first determine whether an error has occurred and, if

so, whether that error impaired the defendant's right to a fair and impartial trial."

*United States v. Martinez*, 455 F.3d 1127, 1129 (10th Cir. 2006) (quotations omitted). We review a district court's refusal to declare a mistrial for an abuse of discretion. *Id*. We will not disturb the district court's determination absent a showing it was based on a clearly erroneous finding of fact, an erroneous conclusion of law, or manifests a clear error of judgment. *Id*.

Tony first moved for a mistrial during the testimony of police officer Anderson Six, a government witness. Before trial, Tony filed a motion in limine requesting a court order prohibiting the prosecutor and government witnesses from referring to the Whitegoats as "victims" in the presence of the jury. The district court granted the motion. At trial, Officer Six testified to receiving a dispatch call regarding two assault victims who had been transported to the Gallup Indian Medical Center. After gathering information about Mr. and Mrs. Whitegoat from Richard Whitegoat at the medical center, Officer Six went to the Whitegoat's residence. Officer Six's testimony described the condition of the residence when he arrived, including the location of several pools of blood. He also provided a foundation for several photographs he took of the crime scene that were admitted into evidence. During his testimony, Officer Six referred to Mr. and Mrs. Whitegoat as "victims" on multiple occasions. The prosecutor also used the term "victim" on one occasion when advocating for the admissibility of an exhibit. Tony objected and then, after Officer Six used the term "victim" a few

more times, moved for a mistrial. The district court summarily denied the request. On appeal, Tony argues the district court's failure to grant a mistrial was error because the references to the Whitegoat's as victims, combined with Mrs. Whitegoat's frail appearance at trial, likely resulted in a jury verdict motivated by sympathy.

Tony's defense strategy focused on discrediting witness identifications of Tony as the assailant. He did not contend that the Whitegoats were not assaulted. In fact, during closing argument, Tony's defense counsel conceded Mrs. Whitegoat had been assaulted. Defense counsel stated "[Mrs. Whitegoat] was hit, by someone. . . . Something really frightening happened to Mrs. Whitegoat. She is obviously still affected by it. She was injured, and she's afraid to be in her home by herself. We do not contest that at all." Because Tony did not argue Mr. and Mrs. Whitegoat were not the victims of a crime, Tony's right to a fair and impartial trial was not impaired by Officer Six's references to the Whitegoats as victims. The district court therefore did not abuse its discretion in refusing to grant a mistrial on this ground.

Tony moved for a mistrial a second time at the conclusion of Richard Whitegoat's testimony, claiming several government witnesses discussed the substance of their testimony outside the courtroom. The district court held an evidentiary hearing on the motion. Angela Tony, Brian Tony's wife, testified that she saw Officer Six, Richard Whitegoat, and an unidentified woman talking in the

hallway outside the courtroom. Mrs. Tony indicated they spoke in English initially, but switched to Navajo when they saw that she was present. According to Mrs. Tony, Officer Six told the others he was asked to testify as to the date and location of the assaults. Mrs. Tony also indicated when James Whitegoat exited the courtroom after testifying, he approached the group and stated he was asked how many brothers Tony had and where Tony lived. Mrs. Tony was not sure whether James was talking to Richard or the unidentified lady. Additionally, according to Mrs. Tony, Richard entered the courtroom to testify almost immediately after James exited. The district court also heard testimony from Richard Whitegoat. Richard stated he did not discuss the substance of any testimony with Officer Six or James. Upon further questioning by the district court, Richard indicated Officer Six opened his case investigation file and began talking to Richard, but Richard walked away and did not listen.

After considering Mrs. Tony's and Richard Whitegoat's testimony, the district court denied Tony's second motion for a mistrial. The district court observed Tony had not requested sequestration of witnesses pursuant to Rule 615 of the Federal Rules of Evidence. Moreover, although the district court indicated it was troubled by Officer Six's conduct, it concluded the issues discussed by the government witnesses were not in dispute and were not central to a determination of Tony's guilt or innocence.

The district court did not abuse its discretion in refusing to declare a mistrial. Under Federal Rule of Evidence 615, a party may request that witnesses be excluded from the courtroom so they cannot hear the testimony of other witnesses. When a party invokes the rule, the district court must also instruct witnesses that they are not to discuss events in the courtroom with other witnesses who are to testify. *United States v. Buchanan*, 787 F.2d 477, 484–85 (10th Cir. 1986). Such an instruction is only required, however, when the rule is invoked. *See* Fed. R. Evid. 615. In the present case, neither party invoked Rule 615. Thus, the district court did not err in failing to instruct the witnesses not to discuss their testimony, and the conduct of the government witnesses did not violate any court order.

Even if an error occurred, Tony has not demonstrated the government witnesses' discussion of their testimony impaired his right to a fair and impartial trial. *See Martinez*, 455 F.3d at 1129. According to Mrs. Tony, the government witnesses discussed their testimony regarding (1) the date and location of the assaults, (2) the place of Tony's residence, and (3) the number of brothers Tony had. The first issue was not in dispute, and the second issue was not relevant to a determination of Tony's guilt or innocence. The third issue was relevant. In particular, Tony claimed he had four brothers, and thus, Mr. Whitegoats statement that "Wiizii's late son came into the house" could have referred to at least five individuals. Although the number of brothers Tony had was relevant, James'

alleged discussion of this issue did not have any effect on Richard's testimony. *See Buchanan*, 787 F.2d at 485 (concluding witness' discussion of testimony was not prejudicial in part because it did not affect other witnesses' testimony). When asked on cross-examination about Tony's brothers, Richard indicated he did not know how many brothers Tony had. Moreover, in closing argument, defense counsel was permitted to argue that Tony had multiple brothers and that Mr. Whitegoat's alleged identification could have referred to any one of them.[4] Because the government witnesses' discussion of testimony was not prejudicial, the district court did not abuse its discretion in refusing to grant a mistrial on this ground.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** Tony's convictions.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[4]Tony did not attempt to call Mrs. Tony as a witness to impeach the testimony of James Whitegoat, Richard Whitegoat, or Officer Six.